IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | Case No. 03 C 9419 Consolidated with 04 C 0163 |
| | ) ) | 04 C 1873 |
| v. | ) ) | 04 C 2138 |
| CSX TRANSPORTATION, INC., *et al.* | ) ) | Wayne R. Andersen U.S. District Judge |
| Defendants. | ) ) ) | |

## MEMORANDUM, OPINION AND ORDER

Before the Court are the parties' cross motions for summary judgment. For the reasons set forth below, we grant in part and deny in part the parties' motions for summary judgment.

## SUMMARY

This case arises from a dispute over changes five rail carriers made to their Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.*, policies. The FMLA ensures that covered employees can take up to twelve weeks of family and medical leave in any given year. The rail carriers claim that, when an employee takes leave covered by the FMLA, the employer has an absolute right to substitute any unused paid vacation, personal, or sick leave. The rail carriers' argument relies upon 29 U.S.C. § 2612(d)(2), a section of the FMLA, which sets forth that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee [for FMLA leave]." Various unions representing the rail carriers' employees challenge the rail carriers' ability to

1

substitute paid leave for FMLA leave. The unions agree that § 2612(d)(2) allows for the substitution of unused paid vacation, personal, or sick leave for FMLA leave, but they contend that § 2612(d)(2) does not override existing contractual rights. According to the unions, applicable collective bargaining agreements ("CBAs") allow employees to determine when vacation and personal days are utilized. The unions assert that these CBAs give employees leave rights greater than the FMLA and argue that the FMLA does not supercede such contractual rights.

We find that the FMLA does not allow an employer to take away any contractual rights. The rail carriers insist the FMLA allows them to supercede, or ignore, certain contract terms. We reject that argument. Accordingly, the rail carriers must fulfill their contractual obligations.

If a CBA gives employees the right to determine when, or in what manner, they take accrued vacation and/or personal leave, an employer cannot force employees covered by that CBA to use such vacation and/or personal leave at a time of the employer's choosing. Many CBAs do more than merely allow an employee to accumulate vacation and personal leave. Instead, some CBAs give employees the additional right to determine when, or in what manner, that leave is used. While the employees' accumulation of paid leave is not affected by the rail carriers' revised FMLA policies, the employees' right to determine when, or in what manner, vacation and personal days are taken is affected.

The FMLA unequivocally permits the substitution of paid vacation, personal, or sick leave for FMLA leave. However, it neither requires such substitution, nor supercedes existing CBA terms to the contrary. No employer can rely on the FMLA to supercede existing contractual terms. CBAs that vest employees with the power to determine when to utilize vacation and personal leave prevent employers from requiring the substitution of paid vacation and/or personal leave for FMLA leave.

## BACKGROUND

The rail carriers in this consolidated action are the Burlington Northern and Santa Fe Railway Company ("BNSF"), CSX Transportation, Inc. ("CSXT"), Indiana Harbor Belt Railroad Company ("IHB"), Norfolk Southern Railway Company ("NSR"), Norfolk Southern Corporation ("NSC"), and Union Pacific Railroad Company ("UP") (collectively the "carriers"). All of the carriers other than NSC are carriers by rail as defined in and covered by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* (Stip. Facts ¶ 1.) NSC is a transportation holding company that owns all of the common stock of NSR and is a carrier as defined by the RLA. (*Id.*) All of the carriers are also employers as defined in the FMLA. (*Id.*) CSXT, BNSF, NSR, and UP are the four largest freight railroads headquartered in the United States. (*Id.* at 2.) IHB is a carrier that operates a regional rail network. (*Id.*) All of the rail carriers are required by the RLA to maintain CBAs with their workers. These CBAs cover the use and accrual of vacation and personal leave.

The carriers have historically maintained written policies and procedures regarding employee use of leave under the FMLA. (*See* Stip. Facts ¶¶ 145, 147, 148, 169, 170, 183, 186, 197, 198, 211, 212.) These FMLA policies cover a variety of aspects of when and how employees may apply for and exercise their right to take FMLA leave. Under the FMLA, an eligible employee may take up to 12 weeks of leave during any 12-month period for one or more of the following: (1) the birth of a son or daughter of the employee and in order to care for such son or daughter; (2) the placement of a son or daughter with the employee for adoption or foster care; (3) the care of a spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition; or (4) a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a). Leave for the serious health condition of

an employee or an employee's family member can be taken intermittently or on a reduced leave schedule when medically necessary. 29 U.S.C. § 2612(b). Leave for birth, adoption, or foster placement may not be taken intermittently, unless the employee and the employer agree otherwise. (*Id.*)

As a general matter, FMLA leave is unpaid. 29 C.F.R. §825.207(a). However, relying on 29 U.S.C. §2612(d)(2), the carriers issued policies to address the circumstances under which they require employees to use paid leave. The specifics of the carriers' revised FMLA policies on substitution of paid leave vary, but they do share certain common characteristics. In general, all of the carriers except IHB require employees to use accrued paid leave (including sick leave, personal days, or vacation time that would be available under the circumstances) when an employee exercises his or her right under the FMLA to take (1) intermittent leave for the employee's own serious health condition; or (2) intermittent or block leave to care for a family member with a serious health condition, the birth of a child, or the placement of a child with the employee for adoption or foster care. None of the carriers requires an employee to use vacation time when taking FMLA leave on a block or continuous basis for his or her own serious health condition, including pregnancy. (*See* Stip. Facts 165, 180, 194, 208, 223.)

All of the carriers allow employees to elect which form of available paid leave (including sick leave if applicable, personal days, or vacation) they would like to use when taking FMLA leave. (Conley Dec. ¶ 4; Wisman Dec. ¶ 4; Emerick Dec. ¶ 3; Poirier Dec. ¶ 11; Dourisseau Dec. ¶ 4.) If an employee does not make such an election, then the carriers will assign paid leave using, in the following order: sick leave, personal days and vacation days.

In addition, the carriers' FMLA policies requiring use of paid leave apply only if an employee

4

is taking family or medical leave that is designated as FMLA leave by the employee or the carrier. If an employee specifically requests FMLA leave, the policies requiring substitution of paid leave will apply. For some carrier policies, if an employee does not request that leave be treated as FMLA leave, policies requiring substitution of paid leave do not apply. For other carrier policies, if it is determined that leave qualifies as FMLA leave, regardless of whether the employee so requests, policies requiring substitution of paid leave will apply. (Stip. Facts ¶¶ 160, 172, 189, 201, 214.)

When a carrier requires a union employee to use a paid leave day for what would otherwise be unpaid FMLA leave, the carrier counts it as a day of paid leave and as a day of FMLA leave, but not as a day of contractual unpaid leave. To the extent an employee has the right to any additional unpaid leave, whether under the FMLA or by contract, he or she retains the right to use such leave if and when paid leave is exhausted. (*See* Dourisseau Dec. ¶ 9; Wisman Dec. ¶ 9; Emerick Dec. ¶ 8.) Thus, the carriers' revised policies require union employees to use their paid leave before they use their unpaid leave if they take leave for family or medical reasons. (*Id.*)

In 2001, BNSF announced its intention to revise its FMLA policies. Shortly thereafter, TCU objected and began the first adversarial proceeding to address FMLA policies requiring the substitution of paid leave, an arbitration before the National Railroad Adjustment Board. Later, in 2003, CSXT filed a civil action in the U.S. District Court for the Middle District of Florida (Case No. 03 C 1069) and BNSF and UP filed an action in the Northern District of Texas (Case No. 03 C 2872) for declaratory judgment. Some unions then filed related actions in this Court against BNSF, CSXT, UP, IHB, and NSR (Case Nos. 03 C 9419 and 04 C 163). On the unopposed motion of CSXT, the case pending in the Middle District of Florida was transferred to this court and given Case No. 04 C 1873. BNSF and UP also filed an unopposed motion to transfer the case pending in

5

the Northern District of Texas, which is now pending in this Court under Case No. 04 C 2138. Pursuant to a Memorandum of Understanding between the parties, all of the FMLA cases – which all agree present the same legal issues – were consolidated before this Court for purposes of summary judgment.

The unions in this action represent the various crafts or classes of the rail carrier employees. In Case No. 03 C 9419, the plaintiffs are the Brotherhood of Maintenance of Way Employees ("BMWE") and individual members of the BMWE. (BMWE Compl. ¶ 4.) In Case No. 04 C 163, the plaintiffs are the Brotherhood of Locomotive Engineers & Trainmen ("BLE"), International Association of Machinists and Aerospace Workers ("IAM"), Transport Workers Union ("TWU"), Transportation Communications International Union ("TCU"), United Supervisors Council of America ("USCA"), and United Transportation Union ("UTU"), along with individual rail employee plaintiffs who are represented by these various unions. In Case Nos. 04 C 1873 and 04 C 2138, the defendants are the American Train Dispatchers Association ("ATDA"), Brotherhood of Railroad Signalmen ("BRS"), Brotherhood of Railway Carmen ("BRC"), International Brotherhood of Electrical Workers ("IBEW"), National Conference of Fireman & Oilers ("NCFO"), Sheet Metal Workers International Association ("SMWIA"), BLE, BMWE, IAM, TCU, UTU, and the Yardmasters Department of the UTU.

The parties all have multiple-count declaratory complaints. However, the threshold issue (and only issue fully briefed by the parties) is whether the FMLA allows the carriers' revised leave policies to supercede CBA terms to the contrary.

## LEGAL STANDARD

Under 28 U.S.C. § 2201, this Court has the authority to "declare the rights and other legal

6

relations of any interested party" who presents "a case of actual controversy." This case presents an actual controversy because the rail carriers have implemented revised FMLA policies that affect the union employees' legal rights. *See GNB Battery Tech., Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995). The issues presented in this case are all questions regarding the parties' statutory and contractual rights and, therefore, can be addressed in a declaratory judgment. *See, e.g. Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002)(courts may use declaratory judgments to "establish the legal rights and obligations that will govern the parties' relationship in the future."). In addition, summary judgment is appropriate when, as in this case, there are no disputed issues of material fact and judgment may be entered as a matter of law. *See* Fed. R. Civ. P. 56.

## I. The FMLA Does Not Allow an Employer to Supercede an Employee's Existing Contractual Rights.

The primary issue in these consolidated cases is whether the FMLA, 29 U.S.C. § 2601, *et seq.*, authorizes the carriers' revised FMLA practice of substituting union employees' paid vacations, personal days, and sick leave when employees utilize the FMLA to take unpaid leave. The carriers contend the FMLA explicitly allows them to substitute vacation and/or personal leave for FMLA leave regardless of contrary CBA provisions. The unions, conversely, assert that an FMLA provision preserving "greater family or medical leave rights" bars the carriers' policies. We disagree with the views put forth by the parties. Vacation and/or personal leave are not greater family and medical leave rights as those terms are used in the FMLA. However, the FMLA does not allow employers to alter otherwise enforceable CBAs. While Section II, *infra*, deals directly with the relationship between the RLA and FMLA, our analysis of the FMLA in this Section does not occur in a vacuum. We are mindful that any reading of the FMLA that would allow the carriers to unilaterally alter the

7

working conditions of its employees would repeal or amend key provisions of the RLA. As such, the maxim that "[o]nly in the rarest instance will a court find an exception to a statute when Congress has not directly amended that statute" guides our interpretation of the FMLA. *U.S. ex. rel. Wisconsin v. Dean*, 729 F.2d 1100, 1107 (7th Cir. 1984).

### A. The Carriers' Position Relies on a Faulty Reading of the FMLA.

The carriers argue the FMLA allows their practice of substituting vacation and/or personal leave for FMLA leave under 29 U.S.C. § 2612(d)(2), which provides the following:

"Substitution of paid leave"

(A) In general

> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under subparagraph (A), (B), or (C) of subsection (a)(1) of this section [which entitle employees to up to 12 weeks of family leave] for any part of the 12-week period of such leave under such subsection.

(B) Serious health condition

> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C) or (D) of subsection (a)(1) of this section [which entitle employees to up to 12 weeks of family or medical leave] for any part of the 12-week period of such leave under such subsection. . . .

The carriers argue that the plain language of § 2612(d)(2) – "the employer may *require* the employee [] to substitute any [paid leave] for any part of the 12-week period"– unequivocally authorizes the carriers to substitute leave. However, the carriers' position fails to give effect to the permissive nature of § 2612(d)(2). Section 2612(d)(2) does not say carriers *shall* substitute vacation leave and/or personal leave for FMLA leave. Moreover, § 2612(d)(2) does not say employers are barred from contracting away their ability to substitute vacation and/or personal leave for FMLA

8

leave. Accordingly, nothing in § 2612(d)(2) suggests employers are free to ignore or abrogate existing contractual terms.

B.  **The Unions' Position Relies on a Faulty Reading of the FMLA.**

The unions point to a different section of the FMLA – § 2652, entitled "Effect on existing employment benefits" – which specifically addresses a circumstance when, as here, a collective bargaining agreement exists. Section 2652 states in relevant part:

> (a) More protective
>
> Nothing in this Act or any amendment made by this Act shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides *greater family or medical leave rights* to employees than the rights established under this Act or any amendment made by this Act.
>
> (b) Less protective
>
> The rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program or plan.

29 U.S.C. § 2652 (emphasis added)

The unions maintain that Congress intended, by the plain language of the statute, to protect the greater benefits enjoyed by employees under collective bargaining.

The unions also point to the legislative history of the FMLA to confirm the plain meaning of § 2652(a). The Senate Report on the bill explained that the Act "establish[es] a minimum labor standard for leave. The bill is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefits laws, and other labor laws that establish minimum standards for employment." S. Rep. No. 103-3 at 4.

If intended as a minimum standard, the unions argue the Congress never intended for any

9

greater leave rights to be affected by the legislation. They cite, for example, the House Report on the bill, which states "that employers must continue to comply with collective bargaining agreements or employment benefit plans providing *greater benefits* than the FMLA." H.R. Rep. No. 103-8, pt. 1, at 50 (1993)(emphasis added). Regarding the same provision, the Senate Report states, "[n]othing in this Act shall diminish an employer's obligation under a collective bargaining agreement or employment benefit plan to provide *greater leave rights*." Sen. Rep. No. 103-3, at 47 (1993)(emphasis added).

We agree with the unions' contention that the FMLA was not meant to diminish greater contractual rights. Congress accomplished this end by omitting from the act any language that would override contractual agreements, unless such agreements prohibited an employee from exercising the very rights granted by the FMLA. However, the unions want us to find that their paid vacation and personal leave rights are "greater *family or medical* leave rights," as that term is used in §2652(a).

As we noted earlier, the FMLA provides for only four defined circumstances under which taking leave is appropriate, none of which include vacation or personal time. The four include: (1) the birth of a son or daughter of the employee and in order to care for such son or daughter; (2) the placement of a son or daughter with the employee for adoption or foster care; (3) the care of a spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition; or (4) a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a).

Congress clearly defined what it meant by family and medical leave. Vacation and personal leave are not covered in this definition. Accordingly, the Court cannot find that vacation and

personal leave constitute "greater *family or medical* leave" as those terms are used in the FMLA. Congress could have prohibited the substitution of vacation and personal leave for FMLA leave in § 2652 but, instead, explicitly stated employers could substitute vacation and/or personal leave as FMLA leave in § 2612(d)(2).

The unions raise another argument with respect to the FMLA. They contend that a carrier's use of the statutory power of substitution violates § 2615(a)(1), which prohibits "interference" with an employee's exercise of his or her FMLA rights. (*See* BLE Second Amended Compl. ¶ 39; BMWE Second Amended Compl. ¶ 22.) We find this argument unpersuasive. Section 2612(d)(2) specifically allows an employer to require substitution of paid leave, and so by definition such an action cannot "interfere with, restrain, or deny" employees' FMLA rights. It cannot be that an employer's exercise of a right granted by the FMLA constitutes a violation of the very same law.

### C. The Court's Reading of the FMLA Gives Effect to the Entire Statute.

The only way to give effect to the entirety of the FMLA is to find that an employer can require employees to substitute vacation and/or personal leave for FMLA leave pursuant to §2612(d)(2) unless contractually prohibited from doing so. A contract that merely provides employees with the right to accrue vacation and/or personal time provides no barrier to the employer's ability to substitute such leave for FMLA leave. This is because the right to accrue vacation and/or personal leave is not affected by the employer's ability to substitute vacation and/or personal leave for FMLA leave. In such a circumstance, an employee would accrue vacation and/or personal leave, which would then be utilized for a purpose covered by the FMLA.

Many employment contracts grant employees rights in addition to the accrual of vacation and/or personal leave, such as the right to determine when to use their accrued vacation and/or

11

personal leave. If an employee has some right in addition to the mere accumulation of vacation and/or personal leave that would prevent the employer from substituting vacation leave for FMLA leave, the employer may not unilaterally override or ignore this contractual right. The FMLA provisions that merely *allow* an employer to substitute leave are not provisions that supercede contractually guaranteed rights.

Our reading of the FMLA does not rely upon the unions' position that the substitution of vacation and/or personal leave for FMLA leave, which is expressly provided for in the FMLA, interferes with or restrains FMLA rights. Likewise, we do not adopt the unions' suggestion that vacation and/or personal leave constitute "greater family or medical leave rights." Nevertheless, the FMLA does not allow the carriers to take away rights the unions bargained for and won in CBA negotiations. This reading is consistent with the text of the FMLA, the legislative history cited by the unions, and the relationship between the RLA and FMLA, which is discussed more fully in Section II.

## II. There is no Repugnancy Between the RLA and FMLA.

The carriers contend that the FMLA is a specific and limited exception to the RLA's ban on unilateral changes to CBAs. We disagree. Our finding that the FMLA does not allow an employer to violate an existing CBA resolves much of this issue. However, the language of the two statutes and cannons of construction disfavoring repeals by implication provide further support for our finding.

The RLA requires carriers and employees "to make and maintain" collective bargaining agreements. 45 U.S.C. § 152, First. The RLA also requires that an employer abide by the terms of a collective bargaining agreement until the parties have exhausted the Act's lengthy procedures for

12

amending an agreement. The RLA provides that "[n]o carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of the Act." 45 U.S.C. § 152, Seventh. Section 156 of the RLA sets forth a procedure for the negotiation of changes to existing collective bargaining agreements. 45 U.S.C. § 156. If a dispute arises between the parties concerning the interpretation of a collective bargaining agreement, the RLA requires submission of the dispute to binding arbitration. 45 U.S.C. § 153. Thus, the RLA "gives 'legal and binding effect to collective bargaining agreements.'" *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 132 (1991).

Congressional intent to have one statute repeal another "must be clear and manifest." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). It is a "cardinal rule . . . that repeals by implication are not favored." *Id.* at 549. "When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551. A "later statute will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two." *United States v. Fausto*, 484 U.S. 439, 453 (1988).

In this case, there is no "clear repugnancy" between the RLA and the FMLA requiring this Court to conclude Congress impliedly repealed a provision of the RLA through § 2612(d)(2) of the FMLA. Section 2612(d)(2) states that an employer "may require" use of paid leave when leave is taken under the FMLA. The use of "may" in a statute is generally viewed as permissive, as opposed to the mandatory "shall." *See Lopez v. Davis*, 531 U.S. 230, 241 (2001). The FMLA's permissive language does not imply that an employer is no longer bound by contractual obligations enforceable under the RLA. To the contrary, the most logical reading of the FMLA is that an employer may

13

require the use of paid leave to the extent permitted under existing contractual agreements. This is consistent with our finding in Section I of this opinion.

Moreover, it appears Congress intended for the FMLA and RLA to coexist. The FMLA clearly contemplated the effect of CBAs, including those formed under the RLA. In fact, Congress encouraged parties to amend CBAs in light of the FMLA by delaying the Act's effective date for employers bound by CBAs until the earlier of: (i) the date of the termination of a CBA; or (ii) the date that occurs 12 months after the date of the enactment of the FMLA. Pub. L. No. 103-3, § 405.

The carriers also contend that the FMLA must trump inconsistent RLA terms because the FMLA is a more specific statute. Since we find no conflict between the FMLA and RLA, this argument is moot. Moreover, even if we were to find a conflict between the FMLA and RLA, we would preserve the RLA's prohibition against the unilateral alteration of CBAs. It is true that a general cannon of statutory construction is that "a later-enacted, more specific, comprehensive statute that targets the specific subject matter at issue in the case controls the construction of a more general statute when there is a potential conflict or discrepancy between the burdens imposed upon the affected entities." *Nutritional Health Alliance v. FDA*, 318 F.3d 92, 102 (2nd Cir. 2003). However, the RLA is a "more specific" statute that targets "specific subject matter" not directly addressed by the FMLA. The RLA was meant to "encourage collective bargaining by railroads and their employees in order to prevent, if possible, wasteful strikes and interruptions of interstate commerce." *Detroit & T. S. L. R. Co. v. United Transp. Union*, 396 U.S. 142, 148 (1969). A central element of the RLA was the preservation of the status quo while carriers and unions negotiated changes in working conditions. *Id.* The FMLA was meant to apply to workers across nearly all industries, making it a law of more general application.

## III. Declaration

The FMLA does not allow employers to violate pre-existing contractual obligations. If CBA provisions grant employees the right to determine when, or in what manner, they utilize certain types of paid vacation and personal leave, those CBA provisions prevent employers from substituting such leave for FMLA leave.

## CONCLUSION

For all the foregoing reasons, the unions' motions for summary judgment [## 56-1, 62-1, 75-1] are granted in part and denied in part. The carriers' motion for summary judgment [# 50-1] is granted in part and denied in part. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: December 28, 2005